UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: | Case No. 17bk12405 |
| Jennifer Robinson, | Chapter 13 |
| Debtor. | Judge Timothy A. Barnes |

TIMOTHY A. BARNES, Judge.

<u>MEMORANDUM DECISION</u>

Before the court is Axert, LLC - 6402 S. Ingleside Series and US Bank Custodian for TLCF 2012A, LLC's Motion to Modify the Automatic Stay as to 6402 S. Ingleside, Chicago, Illinois Regarding PIN 20-23-104-053-0000 (the "<u>Motion</u>") brought jointly by U.S. Bank Custodian for TLCF 2012A, LLC ("<u>U.S. Bank</u>") and Axert, LLC - 6402 S. Ingleside Series ("<u>Axert</u>" and collectively with U.S. Bank, the "<u>Tax Purchaser</u>").[1] The Tax Purchaser seeks to modify the automatic stay with respect to the real property known as 6402 S. Ingleside Avenue, Chicago, Illinois (the "<u>Property</u>"), owned by Jennifer Robinson, the debtor in the above-captioned case (the "<u>Debtor</u>").

The determination of the Motion rests on whether the Tax Purchaser has met the necessary elements to be granted relief from stay, which in turn rests on whether the Debtor has a right to treat the Debtor's Property and thereby the Tax Purchaser's claim through her chapter 13 plan. For the reasons set forth more fully below, upon review of the parties' respective filings and after conducting hearings on the matter, the court finds that a debtor whose period for redeeming taxes sold in Illinois has passed prior to commencing his or her bankruptcy case may nonetheless treat those taxes under a chapter 13 plan if a tax deed has not yet been issued and recorded. As a result, the Tax Purchaser has not established grounds to be granted relief from stay.

---

[1] Neither U.S. Bank nor Axert has filed a proof of claim in this case. As a result, the court has only the filings with respect to the present dispute with which to determine U.S. Bank's and Axert's respective relationship to the Debtor and the Property. Exhibits to the Motion adequately establish U.S. Bank's standing as a tax purchaser with respect to the Property. No such documentation has been submitted with respect to Axert, and Axert's individual standing is questionable. The Motion merely states that Axert "is in the process of purchasing the Certificate of Purchase." While this is inadequate to establish Axert's standing in this matter, for the purposes of determining the jointly brought Motion, it is unnecessary to delve further. U.S. Bank has standing to be heard on a motion for relief from stay, *see In re Whitlock-Young*, 571 B.R. 795, 803-04 (Bankr. N.D. Ill. 2017) (Barnes, J.) (discussing standing in the context of stay litigation), and thus the court will consider the Motion.

JURISDICTION

The federal district courts have "original and exclusive jurisdiction" of all cases under title 11 of the United States Code, 11 U.S.C. § 101, *et seq.* (the "Bankruptcy Code"). 28 U.S.C. § 1334(a). The federal district courts also have "original but not exclusive jurisdiction" of all civil proceedings arising under the Bankruptcy Code, or arising in or related to cases under the Bankruptcy Code. 28 U.S.C. § 1334(b). District courts may, however, refer these cases to the bankruptcy judges for their districts. 28 U.S.C. § 157(a). In accordance with section 157(a), the District Court for the Northern District of Illinois has referred all of its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. N.D. Ill. Internal Operating Procedure 15(a).

A bankruptcy judge to whom a case has been referred may enter final judgment on any core proceeding arising under the Bankruptcy Code or arising in a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(1). Bankruptcy judges must therefore determine, on motion or *sua sponte*, whether a proceeding is a core proceeding or is otherwise related to a case under the Bankruptcy Code. 28 U.S.C. § 157(b)(3). As to the former, the court may hear and determine such matters. 28 U.S.C. § 157(b)(1). As to the latter, the bankruptcy court may hear the matters, but may not decide them without the consent of the parties. 28 U.S.C. §§ 157(b)(1) & (c); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1939 (2015); *Richer v. Morehead*, 798 F.3d 487, 490 (7th Cir. 2015) (noting that "implied consent is good enough"). Instead, the bankruptcy court must "submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing *de novo* those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1).

Motions to terminate, annul, or modify the automatic stay are core proceedings arising under the Bankruptcy Code, in which the bankruptcy court is empowered to enter orders. 28 U.S.C. § 157(b)(2)(G); *In re Mahurkar Double Lumen Hemodialysis Catheter Patent Litig.*, 140 B.R. 969, 976-77 (N.D. Ill. 1992); *In re Quade*, 482 B.R. 217, 221 (Bankr. N.D. Ill. 2012) (Barnes, J.), *aff'd*, 498 B.R. 852 (N.D. Ill. 2013). For the same reason, the court has constitutional authority to hear and determine this Motion. *The Klarchek Family Tr. v. Costello (In re Klarchek)*, 508 B.R. 386, 389 (Bankr. N.D. Ill. 2014) (Barnes, J.). Nothing in *Stern v. Marshall*, 564 U.S. 464 (2011), or its progeny stands as or could reasonably be interpreted as an impediment to the bankruptcy court dispensing with routine motions arising out of the Bankruptcy Code.

Accordingly, determination of the Motion is within the scope of the court's jurisdiction and constitutional authority.

BACKGROUND

The facts of this matter are essentially undisputed. Prior to the commencement of her bankruptcy case, the Debtor fell behind in her property tax payments to Cook County, Illinois ("Cook County") with respect to the Property. On August 6, 2013, Cook County sold certain of the Debtor's taxes to U.S. Bank for $2,120.69. Subsequent tax arrearages were paid by U.S. Bank, in the amount of $11,309.05.[2]

---

[2] The Motion alleges that a third party paid $9,131.62 for the second Cook County real estate tax installment of 2013, both installments of 2014, and the first installment of 2015. The Motion further alleges

On August 3, 2016, one day before U.S. Bank alleges that the Debtor's right to redeem the purchased taxes would have expired, the Debtor commenced a bankruptcy case. *In re Robinson*, Case No. 16bk24964 (Bankr. N.D. Ill. filed Aug. 3, 2016) (Thorne, J.) (the "First Case"). In the First Case, the Debtor scheduled U.S. Bank as a secured creditor in the amount of $11,309.00.[3] The Debtor confirmed her chapter 13 plan (the "First Plan") on December 12, 2016. While the First Plan did not initially provide for payments to U.S. Bank, it did provide for payments to the Cook County Clerk for $17,130.89 and the Cook County Treasurer in the amount of $19,496.36. On the date of confirmation, the Debtor by minute order amended the First Plan to provide that she would "continue to make regular monthly payments to US Bank for their lien secured to Debtor's property."[4] The Debtor was not able, however, to complete the First Plan. As a result, the chapter 13 trustee pursued and received dismissal of the First Case on April 19, 2017.

One day later, on April 20, 2017 (the "Petition Date"), the Debtor filed a second chapter 13 bankruptcy case, the above-captioned case (the "Present Case"). In the Present Case, the Tax Purchaser has participated, bringing the Motion less than two weeks after the Petition Date.

PROCEDURAL HISTORY

This matter has given rise to an extraordinary number of hearings and filings.

In addition to reviewing the Motion, the court has considered the arguments of the parties at the hearings on May 18, 2017, June 29, 2017, July 20, 2017, August 31, 2017, September 21, 2017, September 28, 2017 and November 16, 2017 (the "Hearings"). The court has also reviewed and considered the following filed documents relating to the Motion:

(1) Debtor's Response to Motion To Modify Automatic Stay Filed by Axert, LLC - 6402 S. Ingleside Series and US Bank Custodian for TLCF 2012A, LLC [Dkt. No. 21];

(2) Axert, LLC - 6402 S. Ingleside Series and US Bank Custodian for TLCF 2012A, LLC's Reply to the Debtor's Response to the Motion To Modify the Automatic Stay [sic] 6402 S. Ingleside, Chicago, Illinois Regarding Pin 20-23-104-053-0000 [Dkt. No. 22];

(3) Axert, LLC - 6402 S. Ingleside Series and US Bank Custodian for TLCF 2012A, LLC's Supplemental Brief in Support of Its Motion To Modify the Automatic Stay as to 6402 S. Ingleside, Chicago, Illinois Regarding Pin 20-23-104-053-0000 [Dkt. No. 41];

(4) Debtor's Response to Movant's Supplemental Brief in Support of Its Motion To Modify Automatic Stay [Dkt. No. 45];

---

that the first installment for 2016 is unpaid and the second installment for 2016 would have come due in July, 2017.

[3] The Debtor apparently originally scheduled U.S. Bank under the name of "US Bank Cust For LLC," but later, on December 9, 2016, amended her schedules to reflect U.S. Bank's correct name and address.

[4] Other than the minute order, there is no indication that U.S. Bank participated in the First Case in any way.

3

(5) Axert, LLC - 6402 S. Ingleside Series and US Bank Custodian for TLCF 2012A, LLC's Supplemenal [sic] Brief to the Court's Tenative [sic] Ruling Filed on September 14, 2017 to the Motion To Modify the Automatic Stay [sic] 6402 S. Ingleside, Chicago, Illinois Regarding Pin 20-23-104-053-0000 [Dkt. No. 81]; and

(6) Debtor's Response to Movant's Supplemental Brief to the Court's Tenative [sic] Ruling Filed on September 14, 2017 to the Motion To Modify the Automatic Stay [Dkt. No. 94].

The court has taken into consideration any and all exhibits submitted in conjunction with the foregoing. In addition, there have been numerous scheduling orders and motions seeking extensions of the time periods set thereby—too numerous to set forth herein. Finally, in an accommodation to the parties and their concerns regarding time frames applicable to this matter, and in a step not previously taken by the court, the court issued a Scheduling Order and Tentative Ruling [Dkt. No. 58] (the "Tentative Ruling") on September 14, 2017. In the Tentative Ruling, the court shared its observations on the parties' arguments to date, but reserved a final ruling on the matter. This Memorandum Decision supersedes the Tentative Ruling in all respects.

Though these items do not constitute an exhaustive list of the filings in the bankruptcy, the court has taken judicial notice of the contents of the docket in this matter. *See Levine v. Egidi*, Case No. 93C188, 1993 WL 69146, at *2 (N.D. Ill. Mar. 8, 1993) (authorizing a bankruptcy court to take judicial notice of its own docket); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011) (Goldgar, J.) (recognizing same).

## DISCUSSION

The central question here, whether the Tax Purchaser is entitled to relief from stay under section 362(d) of the Bankruptcy Code, is inextricably intertwined with the much-beleaguered Illinois tax purchase system. That system is set forth at length in an earlier opinion of the court. *In re Bates*, 270 B.R. 455, 459-61 (Bankr. N.D. Ill. 2001) (Wedoff, J.). *Bates* provides so much detail, in fact, that setting it forth herein would more than double the length of this opinion. *Bates*, however, is no longer good law on the central point here, as discussed below. Three fairly recent decisions by the Seventh Circuit Court of Appeals dictate a different result. *See Smith v. SIPI, LLC (In re Smith)*, 811 F.3d 228 (7th Cir.) ("*Smith II*"), *cert. denied* 137 S. Ct. 103 (2016); *In re LaMont*, 740 F.3d 397 (7th Cir. 2014); *Smith v. SIPI, LLC (In re Smith)*, 614 F.3d 654 (7th Cir. 2010) ("*Smith I*").

These cases make clear that the passing of the redemption period is not a material event as it relates to the rights in question. A debtor whose period for redeeming taxes sold in Illinois has passed prior to commencing his or her case may nonetheless treat those taxes under a chapter 13 plan if a tax deed has not yet issued and recorded.

The court will first discuss the *Bates* decision as it reflects on this matter. Following that, it will consider the more recent Seventh Circuit decisions. Finally, the differing result dictated by those Seventh Circuit cases will be applied to the facts at bar.

A.	*Bates* and Redemption Rights

Illinois creates a system not unlike many other states, where its right to payment of delinquent real estate taxes may be monetized by the State through a sale. Buyers of those rights accede in many ways to the rights of the State as to collection mechanisms and other remedies. *Bates*, 270 B.R. at 460-61. Those rights, however, are not unlimited and their treatment when they intersect bankruptcy law is complex. *Id.* at 461-71; *see also Butner v. United States*, 440 U.S. 48, 55 (U.S. 1979) ("Property interests are created and defined by state law. *Unless some federal interest requires a different result*, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.") (emphasis added).

With few exceptions, *Bates* has guided this court's and other courts' analysis of the intersection of Illinois tax sale law and bankruptcy law for over fifteen years. *But see Smith v. Phoenix Bond & Indem.*, 288 B.R. 793, 797 (N.D. Ill. 2002) (disagreeing with *Bates*'s analysis of section 108 in this context). In addition to setting forth the relevant Illinois tax sale law in great detail, *Bates* discusses in detail the interests of the debtor and the tax purchaser at various stages in the sale process. *Bates*, 270 B.R. at 460-61.

The issue that *Bates* so well defines is the central issue here: How may a debtor in a chapter 13 case treat a property on which Illinois real estate taxes have been sold, but for which no tax deed has yet been issued or recorded? That issue turns on the nature of a tax purchaser's rights and is complicated by both the Illinois nomenclature regarding tax sales and the Illinois procedure for redeeming sold taxes.

As to the nomenclature, it is this court's view that much confusion arises out of the Illinois statutes. *See* 35 ILCS 200/21-200 to 230 (the revenue provisions of the Illinois Property Tax Code). For example, Illinois law describes the sale process as follows: "The collector, in person or by deputy, shall ... proceed to offer for sale, separately and in consecutive order, *all property in the list* on which the taxes, special assessments, interest or costs have not been paid." 35 ILCS 200/21–205 (emphasis added). This seems to imply that a tax sale is a sale of the underlying real property, rather than what is actually sold—a right to payment of delinquent real estate taxes and related costs, with collection remedies including a possible later transfer of ownership in the property.

Perhaps swayed by this terminology, *Bates* considers both the rights of a debtor whose delinquent real estate taxes are subject to such a sale and the rights of the tax purchaser in the terms of Illinois redemption rights, one of the debtor's remedies regarding the sale. Redemption is the right of a debtor under Illinois law to pay the previously sold taxes (and any related special assessments, interest and penalties) during a defined period, 35 ILCS 200/21-345 to 397, thereby nullifying the tax sale. 35 ILCS 200/21-390 ("The receipt of the redemption money ... shall operate as a release of the claim to the property ....").

Regarding those redemption rights, *Bates* states that "[a]s long as the redemption period has not expired prior to the bankruptcy filing, there is a claim that can be treated during the bankruptcy case—through sale of the collateral in Chapter 7 or plan treatment in Chapter 13—even though the redemption period expires during the pendency of the case." *Bates*, 270 B.R. at 467.

*Bates* concludes that a debtor may only treat a tax purchaser's claim in bankruptcy if the redemption period had not expired prior to the commencement of the case, equating any treatment

5

in bankruptcy to redemption itself. *Id.* at 465 ("[T]he only permissible treatment of the [tax purchaser's] claim is through redemption."). This treats the rights of a debtor as contingent upon the existence of the redemption right, and makes the passing of that redemption right a bar to bankruptcy treatment.

While *Bates* surely rested on solid ground when it was issued, it is the court's decision that it no longer does so. *Bates* did not have the benefit of the Seventh Circuit's subsequent reasoning in *Smith I*, *Smith II* and *LaMont*.

B.      *Smith I*, *Smith II* and *LaMont*

As noted above, under the reasoning set forth in *Bates*, courts in this and other jurisdictions have treated the passing of the redemption period prior the commencement of a bankruptcy as a bar to treating a tax purchaser's claim in a bankruptcy plan. *See, e.g., In re McKinney*, 341 B.R. 892, 895 (Bankr. C.D. Ill. 2006) ("[T]he [*Bates*] court opined that had the petition been filed before the redemption period expired, the tax buyer would have held a 'claim' that could have been modified and paid in the plan. The [*Bates*] court's analysis is logical and quite thorough and the *Bates* opinion has become the battle flag of debtors who contend that a tax buyer's claim may be modified in Chapter 13."), *aff'd sub nom. Salta Grp., Inc. v. McKinney*, 380 B.R. 515 (C.D. Ill. 2008).

This is much the same as how the confirmation of a foreclosure sale quite literally forecloses in a later bankruptcy case a debtor's rights to treat property so sold. *See, e.g., Colon v. Option One Mortg. Corp.*, 319 F.3d 912, 920 (7th Cir. 2003). But *Colon*'s treatment of redemption in foreclosure matters turns on the vagaries of Illinois foreclosure law and the specific statutory language in the Bankruptcy Code governing foreclosures in section 1322(c)(1), neither of which applies here. *Id.* After a foreclosure sale, the debtor's property interest is negligible. A foreclosure purchaser should be granted relief from stay to pursue its rights as, in relation, the debtor's rights are merely ministerial. *Goldberg v. Tynan (In re Tynan)*, 773 F.2d 177, 179 (7th Cir. 1985).

What *Bates* did was use the rights of redemption to define the balance between the rights of the debtor and the rights of the tax purchaser. More recent cases from the Seventh Circuit, however, strike that balance differently.

1.      Smith I *and* Smith II

As noted above, the parallel between tax sales and foreclosures has driven in many ways the analysis of the courts. Unlike in foreclosures where the interests after sale are ministerial, *Goldberg*, 773 F.2d at 179, the interests of a debtor after the tax sale but before the issuance of a tax deed are anything but. The *Smith I* and *Smith II* cases help draw that distinction.

*Smith I* and *Smith II* reflect an ongoing dispute between chapter 13 debtors and a tax purchaser who had obtained a tax deed on the debtors' residence within the two-year fraudulent transfer look back period applicable in the debtors' bankruptcy case.

In *Smith I*, an appeal was taken to the Seventh Circuit after the bankruptcy court's dismissal of the debtors' fraudulent transfer adversary proceeding for failure to state a claim was affirmed by the district court. *Smith I*, 614 F.3d at 657. On appeal, the Seventh Circuit waded into the question of whether a tax purchaser's interest in real property was perfected when the redemption period

6

passed, or later when the tax deed was issued and recorded. *Id.* at 658. If the former, the perfection fell outside the two-year fraudulent transfer look back, and the transfer was not avoidable under section 548. If the latter, the perfection was within the two-year period, and the tax sale transfer was avoidable. *Id.*

In considering the issue, the Seventh Circuit—as did the court in *Bates*—looked at the nature of property rights under the Illinois tax sale procedures. *Id.* at 658-59. Unlike in *Bates*, however, the Seventh Circuit concluded that the meaningful transfer did not occur at the close of redemption period, but rather when the tax deed was recorded. As the panel in *Smith I* stated:

> The tax sale of the debtor's property only entitles the taxbuyer to a certificate of purchase, 35 ILCS 200/21–250, which "has no effect on the delinquent property owner's legal or equitable title to the property," *In re Application of County Treasurer*, 394 Ill. App. 3d 111, 333 Ill. Dec. 346, 914 N.E.2d 1158, 1165 (2009) (citation omitted). *It is not until the expiration of the debtor's redemption period and issuance of the tax deed that the taxbuyer acquires title and the right to be placed "in possession of the property."* 35 ILCS 200/22-40(c). Yet even the issuance of the tax deed is not alone sufficient to secure the taxbuyer's rights against a BFP, since the tax deed "shall not be of any force or effect until after it has been recorded in the office of the recorder." *Id.* § 22-60. If the taxbuyer fails to record within one year after the redemption period expires, the deed "shall ... be absolutely void with no right to reimbursement." *Id.* § 22-85. *These statutes make clear that it is the recording of the tax deed, not the earlier expiration of the redemption period, that marks the "perfection" of the taxbuyer's interest against a "bona fide purchaser."* 11 U.S.C. § 548(d)(1).

*Id.* at 658-59 (emphasis added). "[A]fter the expiration of the redemption period but before the issuance and recording of the tax deed, the debtor retains significant ownership rights while the taxbuyer acquires only a contingent right to a tax deed." *Id.* at 660. For that reason, the Seventh Circuit concluded that mere issuance of a certificate of purchase was not the date of transfer for avoidance purposes, reversing the dismissal and remanding for the bankruptcy court to conduct the adversary proceeding. *Id.*

In *Smith II*, after the bankruptcy court had rendered judgment in the avoidance action in favor of the debtors but the district court had reversed, the parties returned to the Seventh Circuit. At issue was whether the district court was correct in its conclusion that the tax purchaser was sheltered from liability as a *bona fide* purchaser ("BFP") given that it had complied with the Illinois tax purchase statutes. *Smith II*, 811 F.3d at 235.

In considering whether the tax purchaser was a BFP entitled to shelter from the liability in section 548, the *Smith II* panel considered whether the tax purchaser had paid reasonably equivalent value for its rights obtained in the tax sale. Not surprisingly, the Seventh Circuit concluded it had not, stating that "Illinois's tax sale method is not designed to produce bids that could fairly be called 'reasonably equivalent value.' [I]n an Illinois tax sale, there is 'no correlation between the sale price and the value of the property.'" *Id.* at 238 (citations omitted).

While *Smith II*'s holding may not appear directly applicable to the question of a debtor's interest in the property underlying a tax sale, such is not the case. Given the holding of *Smith II*, a court would be hard pressed to remove the automatic stay's protection to permit an act that would

be avoidable in a subsequent bankruptcy, and quite frankly might be avoidable in the present case under section 549(a)(2)(B). *See* 11 U.S.C. § 549(a)(2) (a "trustee may avoid a transfer of property of the estate … that occurs after the commencement of the case; and … that is not authorized under this title or by the court."). Relieving the stay is quite simply removing the stay's injunctive protection. That may not automatically equate to the authorization needed for section 549 to not apply.

It is not necessary to follow this reasoning to its conclusion, however, as Seventh Circuit has further guided the determination of this matter in *LaMont*.

2.    LaMont

The *LaMont* case is more directly on point to the case at bar.

In *LaMont*, a tax purchaser sought relief from stay in a debtor's chapter 13 case in order to obtain a tax deed on the debtor's property. *LaMont*, 740 F.3d at 402. Relying on *Bates* and other case law, the bankruptcy court denied the motion and on appeal, the district court affirmed. *Id.*

On further appeal, the Seventh Circuit considered whether relief from stay was appropriate in light of the parties' rights under Illinois law and the Bankruptcy Code. In so doing, it made several salient observations useful here. *LaMont*, 740 F.3d at 405-10.

First, tax purchasers' rights under Illinois law are different than foreclosure creditors' rights. *Id.* at 405; *cf. Colon*, 319 F.3d at 920. Following a foreclosure sale, what remains is "ministerial" rights and the debtor's property interest is negligible. *LaMont*, 740 F.3d at 409; *Goldberg*, 733 F.2d at 179. In a tax purchase, the debtor retains title to the property prior to the issuance and recording of a tax deed. "A property subject to a Certificate of Purchase still belongs to the delinquent taxpayer, legally and equitably." *LaMont*, 740 F.3d at 406 (*citing to Smith II*, 614 F.3d at 658-59).

Second, tax purchasers under Illinois law do not have a right to payment from debtors, but rather a lien against the property combined with equitable remedies (*e.g.*, to payment from the taxing authority should the debtor redeem the property, to rescind the sale of the overdue property taxes as a sale in error and, when the necessary conditions are met, to seek a tax deed). *Id.* at 406-07; *see also A.P. Properties, Inc. v. Goshinsky*, 714 N.E.2d 519, 522 (Ill. Sup. Ct. 1999). In the right circumstances, chapter 13 debtors may treat the tax purchaser's lien against the property under a chapter 13 plan. *LaMont*, 740 F.3d at 409; 11 U.S.C. § 1322.

Third, by treating the tax purchaser's claim under a chapter 13 plan, a debtor is not redeeming. *LaMont*, 740 F.3d at 409. "The plan is treating his secured claim, *not* formally redeeming the property." *Id.*; 11 U.S.C. § 1322(b). The debtor's right to redeem the property is separate from the debtor's right to treat the claim and the property. 11 U.S.C. § 1322(b)(8) & (9). This distinction is contrary to the holding in *Bates*, 270 B.R. at 465 ("[T]he only permissible treatment of the [tax purchaser's] claim is through redemption.").

Fourth, the automatic stay applies to tax purchasers with rights to receive a tax deed on the property. *LaMont*, 740 F.3d at 410. During the pendency of the bankruptcy proceedings, the automatic stay prevents a creditor from obtaining a tax deed to the property that will be treated in a bankruptcy plan. *Id.* at 402-03.

Last, "[t]he redemption period expires when it expires." *Id.* The determinations made in *LaMont* did not, in and of themselves, toll the redemption period. *Id.* The redemption period remained the same despite the running of the rights of the tax purchaser to be granted a tax deed on the property.[5]

In light of the foregoing and the facts in the case, the Seventh Circuit reversed the district court and affirmed the bankruptcy court's denial of stay relief. *Id.* at 410.

*LaMont* would be directly controlling on the issue at bar, but for one crucial fact. In *LaMont*, the debtor had filed the case prior to the running of the redemption period. That is not the case here. However, as will be discussed, that is a distinction without much difference.

C.    The Case at Bar and Redemption Revisited

While *LaMont* concluded that, if a bankruptcy case is commenced prior to the running of an applicable redemption period a debtor may treat a property on which taxes had been sold under a chapter 13 plan, thus affirming *Bates*'s holding in this regard, it did not reach the question not before it then but before this court today:  May a debtor, if a case is commenced *after* the running of an applicable redemption period, treat a property on which taxes had been sold under a chapter 13 plan?

*Bates* said no and *LaMont* reserved on this issue, stating "[t]he circumstances may be similar in the tax sale context when a debtor files a bankruptcy petition *after* the redemption deadline has passed, … but the circumstances are different if the petition is filed while time remains to redeem." *LaMont*, 740 F.3d at 406 (*citing Bates*, 270 B.R. at 469-70).

The Tax Purchaser here would have the court put great stock in the wording of that reservation. While it is true, the wording seems to imply that the Seventh Circuit believes there is a difference, the court sees the language above as nothing more than the Seventh Circuit reserving on an issue not before it. Had it said more, it would have been *dicta*, and *dicta* can cause trouble for all concerned.[6]

So that question is left for this court to determine, and the answer is, in this court's view, readily apparent in light of *Smith I*, *Smith II* and *LaMont*.

Recall that the outcome in *Bates* was let by the balance between the rights of the debtor and the rights of the tax purchaser. *Bates* concluded that the finger on the scale was the existence of the redemption rights.

---

[5]    This might appear to put tax purchasers at risk of losing their interests by failing to act, for under Illinois law, a tax purchaser must timely enforce its rights to a tax deed or lose them. *LaMont*, 740 F.3d at 401 (citing to 35 ILCS 200/22-30, 22-40, 22-85). However, should a statute such as the automatic stay or an order of the bankruptcy intervene to prevent a tax purchaser from acting, additional time is afforded the purchaser under Illinois Law. *Id.* at 401; 35 ILCS 200/22-85. Further, additional time may be afforded tax purchasers under 11 U.S.C. § 108(c)(1).

[6]    Admittedly, including that from the undersigned.

*Smith I*, *Smith II* and *LaMont*, however, make it clear that the debtor's rights with respect to the property are not substantively affected by the running of that period. In *Smith I*, the Seventh Circuit stated that "after the expiration of the redemption period but before the issuance and recording of the tax deed, the debtor retains significant ownership rights while the taxbuyer acquires only a contingent right to a tax deed." *Smith I*, 614 F.3d at 660. In *Smith II*, the Seventh Circuit affirmed a right of the debtor not previously under consideration, the right to seek avoidance of a tax sale as constructively fraudulent. *Smith II*, 811 F.3d at 238. Finally, in *LaMont*, the Seventh Circuit confirmed that the debtor retains both legal and equitable title in the property prior to the recording of a tax deed. *LaMont*, 740 F.3d at 406. That property is property of a debtor's estate under section 541 and thus is eligible for treatment under section 1322. 11 U.S.C. § 1322(b)(8) & (9).

On the other hand, rights of a tax purchaser have been, if anything, diminished. Not only is that tax purchaser now subject to potential fraudulent conveyance actions *even if* the sale was conducted in accordance with Illinois law, *Smith II*, 811 F.3d at 238, but a tax purchaser is clearly now a holder of a claim that may be treated under a plan. *LaMont*, 740 F.3d at 406-09. Further, such tax purchaser may be denied stay relief in favor of a plan that treats that claim. *Id.* at 410. Further still, the treatment of that claim is not a redemption. As the Seventh Circuit stated, "[t]he plan is treating his secured claim, *not* formally redeeming the property." *Id.* at 409. This is directly contrary to *Bates*'s determination on this point, and that determination was central to *Bates*'s holding.

It is clearly not, therefore, the running of the redemption period alone that is the tipping point of the parties' rights here. The running of the redemption period is not meaningful as to a debtor's rights under 11 U.S.C. § 1322. Instead, it is the obtaining and recording of the tax deed. As the Seventh Circuit stated, "[t]hese statutes make clear that *it is the recording of the tax deed, not the earlier expiration of the redemption period*, that marks the 'perfection' of the taxbuyer's interest." *Smith I*, 614 F.3d at 659 (emphasis added); *cf. McKinney*, 341 B.R. at 897-98. As the Seventh Circuit made clear, "[t]he redemption period expires when it expires." *LaMont*, 740 F.3d at 410. Until a tax deed is issued and recorded—and the issuance such a tax deed may not occur without stay relief, *id.* (tax purchaser's "attempt to obtain a tax deed is an act to obtain possession of property of the estate and to enforce his lien for taxes. It is therefore properly forbidden by the stay.")—a debtor may treat both its property and a tax purchaser's claim in his or her bankruptcy. *Id.* So long as a tax deed has not been issued and recorded, the plan may address both the property and the claim.

That is not to say that the running of the redemption period is not meaningful in other ways. As *Bates* makes clear, bankruptcy claims are measured at the commencement of the bankruptcy case. Claims in bankruptcy are assessed as of the date the bankruptcy case was filed. *Bates*, 270 B.R. at 467; 11 U.S.C. § 502(b) (requiring the court, in the event of an objection to a claim, to "determine the amount of such claim . . . as of the date of the filing of the petition."). The running of the redemption period prior to the commencement of a bankruptcy case may be meaningful to determining the tax purchaser's bankruptcy claim.

Here it appears clear that, even taking into account possible tolling arguments relating to the Debtor's prior case, the redemption period ran at some point prior to the Petition Date. Because that is not meaningful to the question before the court, it is not necessary to make a finer

determination.[7] Under these circumstances, the Debtor may treat the Tax Purchaser's claim and the Property under her plan.

The Tax Purchaser may, of course, challenge that treatment and, as it has done here, seek relief from stay if the circumstances support such a request. Here, the sole argument raised by the Tax Purchaser in the Motion, however, was that the prepetition expiration of the redemption period barred the Debtor's treatment of the Property and the Tax Purchaser's claim in her case.[8] As that is not the case, the Motion is infirm and that should be the end of the discussion.

Because, however, some courts have insisted on more even where the law is clear, the court will put a finer point on it.

Relief from stay is appropriate only when it can be shown that the prerequisites for relief under section 362 apply. 11 U.S.C. § 362(d). An interested party must request that the court, following notice and a hearing, grant relief from stay if specific circumstances are shown. Section 362(d)(1) mandates that the stay may be lifted "for cause," which includes "lack of adequate protection of an interest in property of such party in interest." Cause has not been clearly defined by the courts and it is usually determined on a case-by-case basis. *In re Wilson*, 536 B.R. 218, 222 (Bankr. N.D. Ill. 2015) (Black, J.) (*citing In re Fernstrom Storage & Van Co.*, 938 F.2d 731, 735 (7th Cir. 1991); *In re Tucson Estates*, 912 F.2d 1162, 1166 (9th Cir. 1990)).

In *Fernstrom*, [t]he Seventh Circuit adopted a three-factor test in order to determine whether "cause" exists to modify the automatic stay. *Fernstrom*, 938 F.2d at 735. "The three factors ask whether: (1) Any great prejudice to either the bankrupt estate or the debtor will result from continuation of the civil suit, (2) the hardship to the [non-bankrupt party] by maintenance of the stay considerably outweighs the hardship of the debtor, and (3) the creditor has a probability of prevailing on the merits." *Id.* (*citing In re Pro Football Weekly*, 60 B.R. 824, 826 (N.D. Ill. 1986)).

As is clear from the wording of this three-factor test, the Seventh Circuit's formulation of "cause" was derived from the facts and circumstances presented in that case, namely a request to continue a civil suit. *Id.* at 732-33. As is the case here, a motion for relief from stay does not always

---

[7] For example, though no tax deed was issued, one was apparently requested. Some disagreement exists between the parties as to when the request was made. The Debtor argues that the request was made during the pendency of the Debtor's first bankruptcy case and, because such an act is subject to the automatic stay, *LaMont*, 740 F.3d at 410, such an act is void *ab initio*. *Cf. In re Whitlock-Young*, 571 B.R. 795, 809 (Bankr. N.D. Ill. 2017) (Barnes, J.) (concluding that stay violations are ordinarily void). That disagreement need not be resolved here.

[8] It should be noted that in the myriad of filings relating to the Motion, the arguments have ebbed and flowed. As this court has previously stated, "[t]he late introduction of a new theory is, of course, improper. A movant generally may not introduce new issues on reply, as this does not provide the nonmoving party an opportunity to respond and therefore prevents the record from being fully developed for the court's consideration. *Aircraft Gear Corp. v. Marsh*, Case No. 02 C 50338, 2004 WL 2222262, at *2 (N.D. Ill. Sept. 30, 2004)." *Newman v. Associated Bank, N.A. (In re World Mktg. Chicago, LLC)*, 574 B.R. 670, 681 (Bankr. N.D. Ill. 2017) (Barnes, J.). For that reason, and because the Tax Purchaser has brought separate requests for relief encompassing the newest of its new arguments, the court does not consider them here. The court instead focuses on the grounds stated in the Motion itself.

seek relief to allow a party in interest to continue a civil suit, and the three-factor test is inartful outside of the circumstances for which it is intended.

Better Seventh Circuit precedent here is that of *LaMont* itself. *LaMont* makes no mention of *Fernstrom*, yet simply concludes that "because the debtors have satisfied their obligations under the plan, there is no reason to modify the stay." *LaMont*, 740 F.3d at 410. This is in line with the body of case law under section 362(d)(2),[9] where courts look to the likelihood of success of a plan as a factor to be considered. *See, e.g., In re SSK Partners LLC*, Case No. 11bk49091, 2012 WL 4929019, at *4-6 (Bankr. N.D. Ill. Oct. 12, 2012) (Barnes, J.). In those cases, a party must show that there is a "reasonable possibility of a successful reorganization within a reasonable time." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 376 (1988).

In chapter 11 cases, "the extent to which a debtor must prove the possibility of an effective reorganization in a lift stay proceeding is judged on a sliding scale and depends on the stage of the case. *In re Cadwell's Corners P'ship*, 174 B.R. 744, 759 (Bankr. N.D. Ill. 1994) (Katz, J.) (*citing United Sav. Ass'n of Texas* 484 U.S. at 376); *In re Ashgrove Apts. of DeKalb Cnty., Ltd.*, 121 B.R. 752, 756 (Bankr. S.D. Ohio 1990)." *SSK Partners LLC*, 2012 WL 4929019, at *4. The same sliding scale would apply in chapter 13 cases. *See In re Franklin*, 476 B.R. 545, 554 (Bankr. N.D. Ill. 2012) (Schmetterer, J.) ("It is unlikely that he will be able to reorganize the financial situation of the Property *in the near future* to the benefit of the Creditors.") (emphasis added); *In re Crenshaw*, Case No. 11-03355-MAM, 2012 WL 5430948, at *4 (Bankr. S.D. Ala. Nov. 5, 2012) (*citing Timbers of Inwood Forest Assocs.*, 484 U.S. at 376).

Here, the Motion was brought eleven days after the Petition Date, at a point when the Debtor was not yet even required to file a plan. Fed. R. Bankr. P. 3002(b). A normal case's progression has, in the court's view, been subsumed in this dispute. As has been noted above, this matter has given rise to an extraordinary number of hearings and filings. Even as it attempted to finish this Memorandum Decision, the court was required to divert attention to a new request by the Tax Purchaser to dismiss the case.

While the Tax Purchaser may be within its rights to act as it has done, it cannot avoid the negative consequences of those actions, namely that this case is still in its infancy despite being six months old. The court has yet to be able to conduct a confirmation hearing on any of the Debtor's plans. The Debtor, in turn, has presented no less than six amended plans—each in an attempt to address the myriad of issues raised by the Tax Purchaser. The most recent plan, the Sixth Modified Chapter 13 Plan, dated November 14, 2017 [Dkt. No. 100], contains a treatment of the Tax Purchaser, and at this "early" stage, that is enough to satisfy the sliding scale of *Cadwell's Corners*. 174 B.R. at 759; *Cf. Timbers of Inwood. Timbers of Inwood Forest Assocs.*, 484 U.S. at 376. A relief from stay hearing on these considerations is not a confirmation hearing. *Edgewater Walk Apartments v. MONY Life Ins. Co. of Am.*, 162 B.R. 490, 499 (N.D. Ill. 1993); *Cadwell's Corners*, 174 B.R. at 759. It is a summary proceeding. *In re Vitreous Steel Prods. Co.*, 911 F.2d 1223, 1232 (7th Cir. 1990). Once the

---

[9] It is generally accepted that residences in individual chapter 13 cases are "necessary to an effective reorganization," 11 U.S.C. § 362(d)(2)(B), even though the terminology of that section is better suited for chapter 11 cases. *See, e.g., In re Spencer*, 531 B.R. 208, 216 (Bankr. W.D. Wis. 2015) ("Because this can be a legitimate use of Chapter 13, courts often conclude that a home or vehicle is typically necessary for a debtor's effective rehabilitation ...."), *aff'd sub nom. Spencer v. Fed. Home Loan Mortg. Corp.*, 246 F. Supp. 3d 1241 (W.D. Wis. 2017); *In re Gregory*, 39 B.R. 405, 410 (Bankr. M.D. Tenn. 1984).

case moves beyond these initial stages, the Tax Purchaser may be in a position to renew its motion on better grounds.

Though, as stated above, *Fernstrom* is not directly relevant here, the foregoing factors can as needed be stated in the terms of *Fernstrom*. *Cf. Gan B, LLC v. Sims*, 575 B.R. 375, 389 (N.D. Ill. 2017) (summarily citing *Fernstrom* factors as alternative grounds for affirming bankruptcy court's denial of relief from stay to tax purchaser).

First, the Tax Purchaser's attempt to pursue a tax deed during the pendency of the stay would prejudice the bankruptcy estate. *Id.* As the Debtor's schedules indicate, there appears to be equity in the Property that is significant. The treatment of the Property is of concern not just to the Debtor and the Tax Purchaser, but all creditors.

Second, the hardship to the Debtor outweighs any hardship to the Tax Purchaser, *id.*, "because the latter may simply pursue a sale-in-error declaration if it is denied relief, whereas the former must forfeit [her] residence if [the Tax Purchaser] is granted relief from the stay and successfully obtains a tax deed. A sale in error would allow [the Tax Purchaser] to recoup the funds it outlaid on the Property's tax arrearages; [the Debtor], on the other hand, has no way to recoup her investment" in the Property." *Id.*

As in *Gan B*, even if the third *Fernstrom* factor militates in favor of the Tax Purchaser, "the first two factors nonetheless significantly favor maintaining the stay." *Id.*

## CONCLUSION

For all of the foregoing reasons, the Motion fails. The Motion should be, and by order issued concurrently herewith will be, DENIED.

Dated: December 4, 2017

Timothy A. Barnes
United States Bankruptcy Judge